The next case on the docket, People v. Richard Holman, 5-23-0139. Please identify yourself and you may proceed. Thank you, Your Honor. May it please the Court, Andrea Lewis Hartung arguing on behalf of Richard Holman. Mr. Holman had one hurdle to clear in 2019 for the Court to grant him leave to claim that his juvenile life sentence violates the Illinois Constitution. He had to make a prima facie showing of cause and prejudice. And he did, saying that since 1979, when as a teenager he committed grave crimes, this State... How old is he now? 64, Your Honor. And so in those decades since 1979, between when he was 17 and now when he's 64 years old, this State has revolutionized sentencing for even the most serious youthful offenses. And our Constitution no longer abides condemning a child to die in prison when the trial court considered no mitigation. And so the circuit court's ruling that Mr. Holman had no cause to pursue his Article I, Section 11 claim after allowing him to file a petition and litigate it for four years through an evidentiary hearing upended the notions of fairness and judicial economy that are embedded in the Post-Conviction Hearing Act. And so this Court should reverse, and Mr. Holman's post-conviction petition should be granted on the merits. And so I'll begin by discussing why Mr. Holman satisfied the cause and prejudice test, and I'll talk about the merits time permitting. And so as mentioned, Mr. Holman filed a post-conviction petition, his initial post-conviction petition, in 2001. And so he had to meet the cause and prejudice test to be allowed to file a petition at issue in this case. And so there's two requirements. And under cause, he had to show an objective factor that impeded his ability to file his petition and his claim in his first petition. And again, that's a premonitious showing, according to People v. Bailey, and the Court needed to take the facts in the petition and the motion as true unless they were rebutted by the record. And they were not. Mr. Holman cited several cases between the years of, several cases and legislation that happened between 2015 and 2019 that gave rise to his ability to file his claim, that our moral consensus here in the state of Illinois had changed in a trajectory such that this state focuses a lot less on giving the harshest of sentences to individuals who are under age 18. And so he cited People v. Buffer in 2019, which told us that 40 years is life without parole, de facto life without parole. He had served that much time. He's like, I served life. I haven't gotten the opportunity for parole. Let me file my petition. He also cited another case, People v. Hoffman from 2019, which has, you know, from the briefings was vacated by agreement of the parties. But it had held that a de facto life without parole sentence for first degree murder could form or could violate the proportionate penalties clause. And this court, the Fifth District, in 2019 held similarly in a case called People v. Parker. That case has not been vacated. Mr. Holman also cited the authorities on which Hoffman relied. And within Hoffman were the citations to People v. Gibson and People v. Akins. And between Buffer and those cases, the courts had walked through the changes that had happened in Illinois law recently that showed a change in moral consensus here in the state of Illinois. And so when the court granted him leave to file, it did so validly. And not just on one basis, but on a body of law that took place over the course of years. And it did so decades after he had initially been sentenced. And so Mr. Holman's point here is that back in 1981, 44 years ago, the court found no mitigation in his case. And so since then, he hasn't been able until now to make a record of what it is that the Illinois Constitution requires or how his sentencing hearing did not meet it. And so I know the state argued that in 2017, this issue was already decided by the Supreme Court. But the Supreme Court decided an Eighth Amendment claim, not a claim under the Illinois Constitution. And that's important for two reasons. First, the Eighth Amendment addresses the entire nation. It's looking at the moral sense of the community in 51 different jurisdictions and trying to come up with a bottom line on what the law should be. So if we're holding a glass and saying, is the glass at least half empty here? And so when we're talking about Section 11 of the Illinois Constitution, our Constitution has affirmative requirements of proportionality and of rehabilitation. And so it's not asking, is this glass at least half full? It's asking, did you fill the glass? Let me ask you about People v. Dorsey. Yes. The state cites that case. And how do you address the state's argument about Dorsey? Sure. Context is important here. Dorsey did not preclude Mr. Holman's claim. And so if you look at what Mr. Holman did, he brought forth a body of law that took place over the course of decades and that applied to juvenile sentencing moving in one direction. The defendant in Dorsey didn't have that same body of law. That individual hadn't brought a post-conviction petition in the trial court alleging that his sentence violated Section 11. He hadn't made that record. He first raised it in the Supreme Court. And what he had done was raise an Eighth Amendment claim. And so what the court said in that case is the Eighth Amendment doesn't speak to the Illinois Constitution. And so you're not telling us when you're telling us that based on Miller v. Alabama, a federal case that addresses the federal constitution, how that applies to your state law claim. Mr. Holman has done just the opposite. I mean, we have a new record in front of us as to how it is that his sentence violated the Illinois Constitution, not the Eighth Amendment. And he did not cite Miller. He cited Illinois law. So if we were to send this back, what is it you're asking the trial court to do? We are asking that the trial court give Mr. Holman a new sentencing hearing. Which is exactly what it did under the last appeal, correct? No. Mr. Holman has not had a new sentencing hearing. In the last appeal that he had, the courts denied him a new sentencing hearing and said that his first sentencing hearing had met the requirements of the Eighth Amendment. That's right. I misspoke. The trial court, they said the original sentencing was violated. Compliant with Miller v. Alabama under the Eighth Amendment. Correct. But as I mentioned, that did not speak to the Illinois Constitution. And so I'd ask this court to think about where we started in 1981 when Mr. Holman was sentenced to life without parole. We'll see in the transcripts that there's some back and forth on whether a sentence would be mandatory or discretionary. And that's because right before Mr. Holman was sentenced, the state of Illinois had changed the rules such that there was no discretion for courts any longer to give individuals under 18 anything less than life without parole. This was a time in which the parole system had just been eradicated. And so this was a time in which we were becoming harsher with sentences for people under age 18. We've done a complete 180. So now we have a situation in which we brought up parole for individuals under age 21. The General Assembly has set forth factors that courts must find on the record, which is different from sentencing adults. And that's how important we've decided it is to make sure that courts are approaching sentencing with this idea that under the science that has been developed, they're more apt and more likely to be rehabilitated. And we're giving them that chance through parole now that Mr. Holman never had, that he's not had in four and a half decades, nearly five decades. And so that is what makes this case different from the cases that have come before it and the cases that the state has cited. And so for those reasons, and because the trial court found no mitigation, so we cannot be confident that his sentence was correct under law, we ask that this court reverse the lower court. We ask that this court grant Mr. Holman a new sentencing hearing. Any further questions? Thank you, counsel. Thank you. Appellee, you may proceed. And please identify yourself for the record. I'm here to please the court, counsel. I'm Becky Ray, arguing for the appellee. I would first like to address the assertion that the trial court's reversal of the finding of leave to file was not within the appropriate timeframe. As this court knows, and as I noted in a footnote, there was at least one hearing that got continued for the COVID pandemic. We dealt with that for years. So while that could be the reason that it took so long for the court to reverse its decision, regardless of when it did, it was still appropriate for the court to do so. The court still had jurisdiction. The grant of leave to file the successive postconviction petition was not the final order in the case. There was still more to come. It was an interlocutory order that the trial court could reconsider. And the trial court has the inherent authority to reconsider, modify, review, vacate any order that it still has jurisdiction over. So when the trial court chose to vacate its original grant of leave to file, it was proper for the court to do that. So that's the first issue. And because it was proper for the court to do that, the inventory hearing essentially became a nullity at that point. Now I would like to address the assertion that the state participated inappropriately in the cause and prejudice determination. Clearly, the state did not participate until after the court had initially reviewed the defendant's leave to file and granted it. As a matter of fact, the trial court had already advanced it to the second stage, saying that it found a substantial showing, and then it held an inventory hearing. The state was not required to remain silent during all of those stages of the postconviction petition. At some point, the state was allowed and required to either file a motion to dismiss or an answer, some responsive pleading. And it waited until the appropriate time granted to it by the Postconviction Hearing Act to do that. But now the defendant says, because the state influenced the trial court in reversing the grant of leave to file, it was inappropriate. The state does not have a crystal ball to know what the trial court is going to do at some point later. So the fact that the defendant is now saying that the state's argument somehow applies retroactively to what the trial court did initially in granting the leave, it just seems illogical. The fact is the trial court reviewed the grant of leave to file, decided that it was not correct based on Dorsey, and reversed that ruling. And it was appropriate for it to do that. Even if this court believes that the trial court's reversal was erroneous and reaches the merits, as both parties have contended that this court can do, this court and the Illinois Supreme Court have said that the defendant's sentencing hearing in 1981 was compliant under the Eighth Amendment. And I know that's not why we're here. We're here for the proportionate penalties clause. But Dorsey says that, well, let me just get you the quote because I can't remember it off the top of my head. Miller's announcement of a new substantive rule under the Eighth Amendment does not provide cause for a defendant to raise a claim under the proportionate penalty clause. And while the defendant relies on buffer, saying that, you know, if his sentence is more than 40 years, it's a de facto life sentence, and he gets to have those things, youth and instantaneous characteristics and rehabilitation reconsidered, the defendant already had that done. He had that in his original sentencing hearing, and this court found that, and the Supreme Court found that. And so the defendant's sentencing hearing already had the benefit of what he's trying to gain now. So there's nothing additional that this court should have considered. So essentially, the defendant, by putting his argument under the proportionate penalties clause instead of the Eighth Amendment, is trying to get another bite at that one. He already had his Eighth Amendment bite. Now he's trying to get his proportionate penalties clause bite. And they're essentially based on the same factors. And the court assessed the defendant's youth and his attendant characteristics. It was present in the PSI through the doctor's reports that were attached to the PSI when the trial court originally sentenced him in 1981. It also considered his rehabilitative potential. The probation officer who prepared the pre-sentence investigation report noted this defendant had no remorse, and for the reasons stated in the probation officer's PSI, had no rehabilitative potential. And the trial court so found when it sentenced the defendant. So essentially, the defendant has already had what he is asking for now, and it's already been affirmed by this court and the Illinois Supreme Court. And at some point, there has to be some finality, especially when, you know, procedural bars apply, like in this case. He shouldn't have the defendant shouldn't have been granted leave to file because he didn't meet the cause test. He shouldn't be granted a new hearing because it's race judicata. He's already had those factors considered that he's asking the court to consider now. And his sentence was compliant, not only with the Eighth Amendment, but with the proportionate penalties clause. The trial court followed what Illinois has long recognized as a difference between youth and adults in sentencing. And it considered those factors of youth that it was required to consider. It considered those factors of rehabilitation that it was required to consider when the defendant had his initial sentencing hearing. And he is not entitled to another for those reasons. I would ask that this court affirm the denial of the defendant's leave to file this successive post-conviction petition. Any questions to this point? Thank you, counsel. Thank you. May we proceed? Yes. I would like to just respond to a few points. And we'll start with whether the court could or could not go back and vacate its ruling granting Mr. Holman leave to file his successive petition. So one thing I would like to clarify is that Mr. Holman hasn't argued that the state participated improperly or that they've done anything improperly here. Mr. Holman made an argument on timing and basically noted that the parties that walked through this cause and prejudice question multiple times, the issue before the court were the merits by then. And so whether the court could or could not, in theory, go back and withdraw leave to file the petition, this court should ask, do we want judges doing that? And especially when the case that the state cited, Allstate, noted that courts really should only be using that power when new facts warrant it. And in this case, as we've argued, there was nothing that warranted it because Dorsey here did not apply. And so turning to Dorsey, the state noted the language that said that Mr. Dorsey could not use Miller to raise, Miller v. Alabama, to raise his Illinois constitutional claim. We agree with that proposition. What we are saying is that Mr. Holman is relying on the change in the state of law here in Illinois, not in the United States, here in Illinois, because that's the relevant community. And he is saying that when we look at that and when we look at what happened at his sentencing hearing 44 years ago, we shouldn't have questions on whether that hearing, when no mitigation was presented, when the court found no mitigation, whether that complies with our understanding of Article I, Section 11 of the Constitution. Now, the state mentioned the pre-sentence investigation, and the court did look at that. But if this court looks at what the PSI itself said and then looks at the record before it, the record from the evidentiary hearing with an expert who explained the science and also said that science did not exist until well after 1981, then you can see that the issue here is that whatever the court had before it, our understanding of that information was not accurate, according to the science we have now. So for instance, we've got age that the state said. He's 17, he's almost 18. We have an expert saying, yes, well, 18-year-olds are a lot like 17-year-olds in the terms of their executive functioning in very important ways. And for Mr. Holman, who also had an intellectual disability and who also had a head injury in this history of abuse, he is adolescent squared. So the court just didn't have a way to understand that he's looking at a 17-year-old biologically, but not neurologically. The PSI is noting that Mr. Holman had some juvenile adjudications, so he can't be rehabilitated. Well, our thinking then was, well, if kids are committing crimes at this age and not learning, then they're irredeemable. And we know now that even serious offenses committed in youth don't tell us anything about whether a person is going to be dangerous in the future. And that's the reason the General Assembly has put into our statutes a parole hearing. And so now a 20-year-old, more than 17, a 20-year-old could commit multiple murders and will be eligible for parole review after 20 years. Mr. Holman has served more than twice that amount of time and has not been eligible for review. And so we do have to ask, what are the sentencing hearings? Well, we just don't have enough information to know whether or how this court considered or the trial court considered any mitigation that we know is applicable now. When we don't know, we should give Mr. Holman a new sentencing hearing where the court can go through the factors that we know are relevant and make a decision for itself based on these factors whether or not Mr. Holman should be, is irredeemable or eligible for release. And for that reason, we ask that the court reverse. Well, did the trial court not have before the fact that, my notes here correctly, that Mr. Holman and a co-defendant murdered Setmire, Hortel, Cash, three murders there, and admitted to several other murders. So I can't remember what you got, but just saying he might have had a few juvenile transgressions, he was a serial murderer. And the trial court had that and took that into account as a mitigation or aggravation. So I'm not trying to be harsh, but it's a little disingenuous to stand before us and say that this man may have had a little bit of a juvenile criminal history. He had a significant criminal history. He did, Your Honor. I did not mean to suggest that he hadn't been convicted of the murders I was talking about before the murders that led to his sentencing hearing. So I'll take your points backwards. Yes, Mr. Holman allegedly confessed to murdering many people, but if you read the trial transcripts and what was presented in evidence at trial, you have this information coming from a police officer who said that they interviewed Mr. Holman and two months later wrote down this confession. And while Mr. Holman was convicted of two murders, like if he had committed many others, one would expect that there would be investigations or charges in those cases. And so what that tells me is, again, we're looking at a person who really is not functioning like a 17-year-old, who really is not developed as to his executive functioning to the extent that he is before the police confessing to murders, at least one of which the police already had somebody in prison for. And so I would also point out that Mr. Holman participated in these murders, and I say participated because the state did not present at trial that he was the person who did the killing. In fact, the state presented an accountability theory, but that only happened after he met this at least slightly older, but definitely, as far as we know, not developmentally disabled individual. And we do know from his reports from juvenile detention and from a psychology report that he, because of his limitations, was maybe a bit more suggestible or a lot more suggestible than one would expect for someone his age. And so those are things that, again, now we know from the science that they matter, and we know that those things come together and came together to reduce Mr. Holman's functioning in a way that the court just could not understand in 1981, and no one was looking at adolescent development in that way in 1981. Are you able to provide us with any cases where a defendant has pursued Miller claims to the Eighth Amendment and they've been successful under their own mind in the course of a criminal story? I cannot provide a case where they have specifically been successful. What I'll give the court is People v. Gibson, 2015, Bill at First, 122451. And in that case, Mr. Gibson had brought both Eighth Amendment and proportionate penalties clause claims as to his 52-year sentence. And what the court said is that, you know, this doesn't violate the Eighth Amendment. There's nothing wrong with your sentence under the Eighth Amendment. But the Eighth Amendment does not speak to the Article 1, Section 11 under the Illinois Constitution. And so that we do need to look at, and we do need to take into account. I can also point this court to People v. Carrasquillo. And in that case, the appellate court also held that the Illinois Article Section 11 is broader than the Eighth Amendment. And so the Eighth Amendment doesn't speak to whether or not this person's sentencing hearing, which I believe also had been held decades prior, complied with what we expect the Illinois Constitution, or the courts to do under the Illinois Constitution today. Thank you. All right. Thank you, counsel. We will take this matter under advisement and issue a ruling in due course.